Alright, I think we're losing the folks from Francis Lewis. Thank you for being here and good luck with the rest of the day. Mr. Silverman will wait just a minute until the students leave. Okay, so you've reserved three minutes for rebuttal, which gives you seven to begin. The floor is yours. Good morning, Your Honors. Benjamin Silverman for Kyle Leeper. This case involves two matters of first impression about DNA, which is increasingly central or central to many criminal cases. And the first issue is whether, by styling an application as a search warrant application, the government can obtain ex parte in order to extract someone's genetic code without any ability for the person to object until after the damage is done and the taking occurs. And so to determine whether people are afforded opportunity to be heard at a meaningful time and a meaningful place, the Supreme Court sets a three-factor test in Matthews v. Edwards. I don't think there's any case where the Supreme Court or a circuit court has ever said someone has an opportunity to challenge a search warrant before it's executed. That would be a pretty radical thing for a court to order, right? Search warrants are inherently an ex parte thing. So, three points, Your Honor. First, the question is why is the style of the search warrant? At page 22 and 23 of our brief, we cite a number of cases, and the Flanders case in turn cites a number of cases where these applications are made not as search warrants but as motions to compel and requests for subpoena with notice. That's certainly the norm in this district. So the question is why would it matter that in this case, in the same posture, the government instead chose to style it as a search warrant? And does that matter in substance? And second, the search warrants for DNA are quite a sui generis. I hope I pronounced that right. I read more than I speak. But because unlike most applications where search warrants are invoked, and, again, we think it's questionable to even call this a search warrant application. But this is not the feds, right? This is this warrant was to the state, right? It was in the state, right? And New York State does require ex ante notice to people. And so this was a violation under state law. It's sui generis about the swabbing someone's mouth for saliva. We allow search warrants without any notice and opportunity to be heard for someone's house, for someone's phone, which has, as you know, all sorts of personal information. And we don't make exceptions. Like this is something very personal, so you're going to get a notice and opportunity to be heard. Well, I think the Supreme Court has always viewed corporal evidence as in a slightly different category, going back to Schmerber. When you get someone's blood, you don't have to give notice to someone to get a search warrant for their blood, right? In fact, if your client's saliva was on a glass and they didn't need a swab, they could just take the saliva off the glass and do a genetic search without your client ever knowing about it, right? That's an abandonment issue. There's something special about the genetic information that requires all this extra process. But in my situation, even though they're going to get your conscious genetic information, the laws never have said, well, if you're going to search that saliva for genetic information, you've got to let them have a chance to be heard on that because that's personal. Yes, Judge Bianco, so just to respond to two different issues there, with respect to the glass or the classic example of the cigarette handed to the suspect, courts have analyzed that as abandonment because the Supreme Court does hold that taking DNA is a search. And so the question is, what needs to be accomplished to obtain that search lawfully and seizure? And so with respect to why DNA is different, one, unlike most warrants, it's not evidence that's possible to exfoliate. Even when we die, our DNA is still in our bones. They'll have to show the search warrant affidavit to your client if the reason you give notice and opportunity to her is to challenge the probable cause. Your client would get to read whatever they know about the investigation. I know you say in this case it didn't really matter, but we don't do this on a case-by-case basis where we say, well, would it harm the government if this person knew about the investigation or not? Well, I think that's exactly right not to look at it on a case-by-case basis and to look at what will happen in a broader sense, which is why Matthews applies. But responding specifically to what would happen if you looked at it here, one, there was no probable cause to remove this person's DNA because there was nothing against which to compare it. Well, let me ask you about that because I thought that was a more interesting issue. But you seem to suggest that there has to be some certainty that there is a sample to compare to, that something's been recovered that is subject to comparison. But the Fourth Amendment doesn't deal in certainty. It deals in fair probabilities. So the question is why isn't, if they have zip ties and a car and a gun that, and they have probable cause to believe your client is the suspect in the murder and that those items were touched by the suspect. Let me just finish. Why isn't there a fair probability where DNA gets left on everything that there's a fair probability that at least on one of those three items that there's going to be a recoverable DNA sample? Shouldn't that be the test rather than that they have already done a lab analysis and recovered something, a DNA sample that is comparable? No, Your Honor, for two reasons. One, the following hypothetical illustrates why not. If you swab a crime scene sample for DNA and there's no DNA, then it's impossible that the suspect's DNA will be evidence of a crime. And so if you don't know whether there's DNA, you don't know whether there's probable cause. And so – But, I mean, is it the point that it's probable that there is DNA on the items that were recovered? Well, there would have to be some showing that it's probable. There's nothing like that here. There's no probability just by the fact that there are – Is there a common sense inference that if someone handles things, that there's a fair probability there's going to be recoverable DNA on it? Absolutely not. In fact, absolutely not. So if their affidavit had said, based upon my experience, it's likely that DNA would be recovered on these items, would you say that's an affidavit? They have a sentence in the affidavit that said that? No. If you had a scenario that you don't have here where you had, you know, someone said, well, I saw them take the object and rub it all over themselves and things that would pour DNA, sweat all over it, the kinds of things that deposit DNA may be in that circumstance. But that's not what we have here. Just the mere existence of an untested object can't show probable cause of the person's DNA. And if you look at the example Your Honor raised – There's no case for that. I mean, it seems to me yours is a very rigid requirement that basically says you have to establish the existence of a testable sample of DNA before you can acquire a sample from a suspect. That's a fair characterization of your position? I would say a sample at least of DNA. I think the question of whether it's usable or testable is not an issue that needs to be reached here because there was no known sample of DNA at the time that the search warrant or the application filed as a search warrant was obtained. But what's your best case for that? Well, we cite quite a few cases. I think the majority of cases have found that. And I would also note that you have to have a sample before you can get a search warrant. Sure. I mean, and just two points, two things to make that point. First, Judge Bianco raised search warrants for a home. While someone commits a crime, you could say arguably that there might be evidence in their home or evidence on their home, but the particularity clause requires a showing that the particular place to be searched, here the DNA, will yield evidence of a crime. And so the question is whether that particular place, DNA is likely to prove evidence of a crime or probable to show evidence of a crime. And second, with respect to the court asked if there's an object, is it likely that there's DNA on it? And the answer is no. Certainly there's nothing in the record to establish that, but certainly in the majority of criminal cases you see it's a minority of swabs that turn up DNA, much less usable DNA. The government talks about the delay and the harms of delay, and I'm not unsympathetic to that. I'm familiar with the classic example of the TV show and the police are pounding out the warrant and the evidence is foliated. But number one, that's just an issue with the Fourth Amendment and search warrants in general and applications in general, probable cause in general, as respect to all places and all searches. But second, it's much less of an issue here because you have someone who's in custody who can't foliate their DNA. And with respect to the issue about disclosing the problem. This is a rule. If you're correct on this rule, it wouldn't just apply to someone who's in custody. It would apply to any situation, any situation, including people who are not in custody. Right? You could have all sorts of – you could have a rape where there's not – it's not known yet whether or not there is a recoverable sample or not. And the person – you cannot get a search warrant to get a swab of their mouth until a test was done of the rape kit or something like that. Right? Well, that's how you would show that the particular place to be searched contains evidence of a crime. That person could flee. That person could flee. But that's always the case, you know, that someone's – I would say that in this – in the circumstances of this particular case, any expectation of privacy that your client had was de minimis. So I think that the case to look at here is Maryland v. King. And Maryland v. King, which allowed searches of DNA akin – and the second paragraph makes clear – akin to routine booking questions or some kind of routine booking or inventory search, allows only for so-called serious crimes. And the government's not alleging that that existed here. He was under arrest and indicted for criminal possession and the fourth. That was the most serious charge at the time. And so the Supreme Court's been clear that his expectation is not diminished. And in terms of expanding Maryland v. King, absolutely that shouldn't happen because the entire opinion is based on Section 4B, which, you know, I think you can look at Justice Scalia's dissent and think about Justice Brandeis' admonishment about embarrassing the future. What Maryland v. King says is this DNA will only be used for identification. And we now know that's wrong and the government's not disputing that that's wrong, that you take these DNA samples and you put them on the FBI database, disclosable at a moment's executive order, or in many cases, as we show, put onto privately run databases where the whole purpose of working with law enforcement is to get the value of the genetic data, right? Once you do that, certainly it can't be undone with a proceeding after the fact. It's no longer a proceeding at a meaningful time and a meaningful place because the data's already out there and it can't be undone. But moreover, everything in the dicta and the reasoning of Maryland v. King has been shown wrong. And so that's why this Court's decision in Emerson says, well, if we learn new things about what DNA can do beyond identification, we'll reconsider the application. Now, we're not here today asking for reconsideration of the strict holdings of Emerson or Maryland v. King. But in terms of expanding those cases beyond their holdings, that absolutely shouldn't happen because the reasoning that underpinned those holdings has been significantly undermined. And we acknowledge the government's very substantial interest in obtaining this data. But the question is, do they have that interest ex parte? And Judge Bianco, in terms of the question about probable cause, presenting an application on notice with redactions is very different than doing it unknown. Even in a SEPA case where you're dealing with classified information, there will be a docket sheet notation and the defense will know that the application is being made. This will be the first time in the history of the United States that a circuit court has found in a search warrant context that someone has the notice and opportunity to be heard prior to its execution. Correct or not correct? I believe that's right. I acknowledge this is an issue of first impression. As I said, we point to many cases where the norm is, in fact, to do it that way. My suggestion to you is that this is no different than in searching someone's phone. You can learn a lot more about someone's life. I understand genetic information reveals certain things. But you give someone access to someone's phone, you can learn everything about a person's life. And yet, no court, the Supreme Court, no court has ever said before you search someone's phone, which you can make all the same arguments you're making. There's no spoliation issues. They have the phone in their possession. But somehow they have to give you a chance to be heard. But first, that heightens the need for particularity because just having probable cause of someone committed a crime, I've never even seen a search warrant affidavit so bare to say someone committed a crime while holding their phone in their pocket. I don't think that would provide probable cause to search the phone. That's why the particularity is so important, because of all that privacy. But I also wouldn't understate the amount of secrecy that's in someone's code. We're talking about unknown children, siblings, genetic diseases, things that people know are going to lurk and come to fruition for them but don't want to tell their families. And we're talking about putting this, as we show, onto private databases or publicly monitored, publicly owned databases of questionable privacy where it can never get back. And where the correlations between the genotypes and the phenotypes and the so-called CODIS loci, that's the locations they assess, and known people are increasingly proven. And I would just note that in 2017, when the FBI validated CODIS for more locations and defense lawyers sued to obtain the validation study, the FBI resisted on the grounds that it was private medical information. They ended up giving up that position based on the consents that the individuals assigned when they participated in that study. But the FBI's position absolutely had to acknowledge that this is private medical information. So I wouldn't understate the privacy interest. All right. Well, we've gone way over, but you've got three minutes for rebuttal, so we'll hear now from Mr. Clymer. Good morning. May it please the Court. Stephen Clymer for the United States. I'd like to just address a couple of issues that came up during the defense argument. First, it is true, as the Court has pointed out, that the position the defense takes regarding the probable cause issue, the need for a comparison sample argument, is inconsistent with the fair probability language in Illinois v. Gates. It's also, however, inconsistent with the totality of circumstances language. Gates makes clear that a court can consider the totality of circumstances and indeed must consider the totality of circumstances before deciding whether there's probable cause. So would the government agree that if they had no items where they could lift a sample from, that that would be – you couldn't try to get a search warrant for a swab. Let's say they haven't recovered any evidence yet, but they're thinking, you know, we're going to recover some evidence. Let's get the swab now. Would the government agree that that's not enough? I would agree that a court, before it issues the search warrant, should take that into account. And if a probable cause is lacking based on a totality of circumstances. The government didn't identify any items that it could compare to. Then it would be a mistake to issue that search warrant. All right. But a court should still consider that fact. The problem with defense argument here, Your Honor, is they want this Court to ignore the fact that Leeper possessed that gun for a month between the murder and the time it was seized from. They want the Court to ignore the fact that Leeper was in that rental car from Cortland, New York, to Los Angeles, California, and back again to Cortland, New York. And they want to ignore the fact that there's evidence that Leeper was the one who put the zip ties on the victim before she used the gun. But why is this a search? I guess I'm trying to figure out why this is a search warrant. I mean, a search warrant, usually you have to specify what is to be searched, right? Correct. This is really a motion to compel the production of DNA. And they're not going to search the DNA. You're not going to search its mouth for DNA. You're going to just compel him to consent to a search where somebody is going to take a swab and then get DNA that they're going to use in an investigation. I believe the way the warrant is styled here, Your Honor, and I think it's at C2 of the appendix, is that they are to search Kyle Leeper and seize DNA evidence by buccal swab. I believe that's the way it's styled. Is there any reason why, though, this couldn't be done by order? I'm not completely familiar with New York law, Your Honor. I believe there are cases where it has been done by court order. But, again, if it's done by court order, Your Honor, the issue of probable cause is identical. The question for both a court order or for a search warrant is whether there's probable cause. They would potentially get an opportunity to be heard if it was by order, right? I believe that there would be an opportunity to do that. In New York law, they would be, right? Correct. Even if we looked at it in that context and said, okay, let's look at the Matthews factors, although, as this Court points out, no court has ever said that in either context, either the court order context or in the search warrant context. The defense raises a complete red herring about the dissemination of the information here. There is no evidence in the record that the DNA profile from this search warrant execution would ever make it into any database anywhere. New York law doesn't provide for it. And to the best I can tell, neither does federal law. I don't know that that's the critical issue. Let me just go back to the probable cause issue. You say, well, he had the gun for a long time and he used the car for a long time. And, therefore, I think you're saying that there's a fair probability that a comparable DNA sample is going to recover from one of those items, right? Correct. There's nothing in the affidavit about that. When I suggested that to Mr. Silverman, he said, that's wrong. That's, like, wrong as a matter of science. There's plenty of time where there's no DNA that turns out to be comparable. Doesn't it need to be something in the affidavit where there's at least a sentence where an agent or police officer says, based upon my experience, there's a fair likelihood that, given that he used these items for this period of time, that there's going to be a recoverable sample? Or is that unnecessary and that the court can just, I guess, based upon their own common sense, make such an inference? I believe it's profitable but not necessary, Your Honor. I believe courts can do the same thing with fingerprints. There was nothing in this affidavit along those lines, though, right? That is correct. But, as I say, courts do that with fingerprints all the time. And I believe that by 2019, which is when this warrant was issued, it was very well known in the judicial community and the legal community that if somebody touches something, DNA evidence can be left. So it was up to the court, applying the fair probability test in Illinois v. Gates, to look at the totality of circumstances, including the number of objects, the type of objects, the amount of time Lieper had access to those objects, to decide whether or not DNA would be left in there. The other point I'll make, Your Honor, is that, as the court points out, there is no appellate court authority to support the defense position. These police officers were entirely reasonable in their reliance on a search warrant that had been issued by a magistrate in this case. And so, you know, the key – my colleague here says that – You're talking about on good faith. Correct. It comes down to good faith. Absolutely. And even the cases – and there's a handful of cases that say a comparison sample is required. They're all lower court cases. They're not the majority, by the way. They're the minority. And the recent cases go the other way. But even those cases upon which my colleague here relies that say that also say that the good faith exception applies. And here, there's no reason to believe these police officers acted unreasonably in relying on that warrant. Unless the court has questions, that's all I have. All right. Thank you. Mr. Silverman, you have three minutes for a rebuttal. Thank you, Your Honors. And we appreciate the court's having adults just earlier. In terms of dissemination, I just want to note on the facts of this case, government's appendix, page 103, says that this DNA was maintained at the FBI database in Quantico. So that's this DNA. And, of course, if we talk about all cases, we're talking about distribution over many more databases. So that is in the record, both of this case and as a general matter. We agree, Judge Sullivan, that this really is a motion to compel production of DNA. And as the court knows, and Judge Bianco knows, Judge Parker, I don't know, has been in the district court as recently with DNA. But that's the norm, right, to do it as a motion to compel. And so the question is, if you style it and call it a search warrant, do you change the obligation to tell your party? And in substance, nothing's changed. It's pretty much going to be probable cause either way, right? Well, the probable cause requirement change, it may be the same, but the notice requirement is quite different. And in terms of probable cause, no, we don't think it's sufficient just to say that this thing was in his car. By the way, he had been arrested over six weeks before this application was made, more than enough time to know whether or not DNA was on those objects. So to some extent, what the government's doing, and I say this respectfully, they're trying, you know, this wasn't federal agents who did this, but what they're saying is we should eliminate the particularity clause because they hadn't tested the DNA as promptly as they might have. And I would also note that if you don't swap these things immediately, the odds that you're going to get the relevant person's DNA off them drop rather precipitously. So you should, under a normal case, absolutely know by this time whether or not there's DNA. And that also goes to the need. But I would also point out that the Fourth Amendment has an exigent circumstances exception, which wouldn't be applicable here because you have someone detained, but might in another case like some of the hypotheticals that Judge Bianco raised. But in a case where someone's in custody, has no ability to exfoliate the evidence, where the government on notice can make an application to withhold or redact certain information, there's just no excuse to do it ex parte. So unless the Court has any other questions, we have put our arguments in our briefs. All right. Thank you. Thank you. A reserved decision.